J-S70043-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.M.F., a Minor | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.F., Father | : | No. 783 EDA 2016 |

Appeal from the Decree entered February 9, 2016
In the Court of Common Pleas of Philadelphia County
Family Court Division at No(s): CP-51-AP-0000087-2014,
FID 51-FN-386654-2009

BEFORE: OLSON, OTT, and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 07, 2016**

A.F. ("Father") appeals from the Decree granting the Petition filed by the Child Advocate, the Defender Association of Philadelphia, on behalf of his eleven-year-old daughter, L.M.F. ("Child"), seeking to involuntarily terminate Father's parental rights pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and change the permanency goal for Child to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351.[1] We affirm.

The trial court set forth the relevant factual background and procedural history of this case in its Opinion, which we adopt as though fully set forth herein. *See* Trial Court Opinion, 5/18/16, at 1-2 (unnumbered).

---

[1] In a separate Decree entered on February 9, 2016, the trial court terminated the parental rights of Child's mother, L.K., a/k/a L.G. ("Mother"). Mother has not appealed the termination of her parental rights or the change in Child's permanency goal, nor is she a party to the instant appeal. The Philadelphia Department of Human Resources ("DHS") is a participant in the appeal.

On February 9, 2016, the trial court entered the Decree involuntarily terminating Father's parental rights and changing Child's permanency goal to adoption. On March 8, 2016, Father timely filed a Notice of Appeal, along with a Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

Father now presents the following issues for our review:

1. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather … pursuant to 23 Pa.C.S.A. [§] 2511(a)(1)[,] where [F]ather presented evidence that he tried to perform his parental duties[?] Additionally, [F]ather visited [Child] throughout [the] time she was in foster care.

2. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather … pursuant to 23 Pa.C.S.A. [§] 2511(a)(2)[,] where [F]ather presented evidence that he has remedied his situation by completing parenting classes, random drug screens and has housing[?]

3. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather … pursuant to 23 Pa.C.S.A. [§] 2511(a)(5)[,] where evidence was provided to establish that [] [C]hild was removed from the care of [] [M]other[?] Additionally, [F]ather visited with [Child] and maintained contact with her throughout the case.

4. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather … pursuant to 23 Pa.C.S.A. [§] 2511(a)(8)[,] where evidence was presented to show that [F]ather is capable of caring for [] [C]hild[?] Additionally, [F]ather visited with [Child] consistently and maintained contact with her.

5. Whether the trial court erred and/or abused its discretion by terminating the parental rights of [F]ather … pursuant to 23 Pa.C.S.A. [§] 2511(b)[,] where evidence was presented that clearly established that [] [C]hild had a close bond with [] [F]ather[?]

Father's Brief at 7.[2]

In reviewing an appeal from a decree terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.
>
> As [the Supreme Court] discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. [The Supreme Court] observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its

_____

[2] Although Father stated his issues somewhat differently in his Pa.R.A.P. 1925 Concise Statement, we deem them preserved for our review. However, Father waived any challenge to the goal change by failing to preserve such a claim in his Concise Statement and the Statement of Questions Involved portion of his brief. ***See Krebs v. United Ref. Co. of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in the Rule 1925(b) concise statement and the statement of questions involved in the appellate brief).

own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (some internal citations omitted).

Termination of parental rights is controlled by Section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden rests upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with a consideration of section 2511(b). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In the instant case, the trial court terminated Father's parental rights under section 2511(a)(1), (2), (5), (8), and (b). We will focus on sections 2511(a)(2) and (b),[3] which provide as follows:

**§ 2511. Grounds for involuntary termination**

_____

[3] Because we focus only on sections 2511(a)(2) and (b), as raised in Father's issues numbered 2 and 5, we need not address Father's issues numbered 1, 3, and 4, as they concern other subsections of section 2511(a). *See In re B.L.W.*, *supra*.

**(a) General rule.--** The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.--** The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

Father argues that the trial court erred in determining that the requirements of subsection 2511(a)(2) were met by clear and convincing evidence. Father's Brief at 15. Father asserts that the court improperly overlooked evidence that he has successfully completed several of his Family Service Plan ("FSP") objectives, including parenting classes and domestic violence and anger management programs. *Id.* According to Father, the evidence showed that he had remedied the conditions that caused Child to be placed in foster care, and he is able to appropriately care for Child. *Id.*

In its Opinion, the trial court concisely summarized the relevant law, addressed Father's claims, and determined that the evidence was clear and convincing that termination of Father's parental rights under section 2511(a)(2) was warranted. **See** Trial Court Opinion, 5/18/16, at 3-4 (unnumbered). The trial court acknowledged that although Father had made minimal progress concerning some of his FSP objectives (*i.e.*, Father's inconsistent attendance at family therapy), he had not *completed* any of his FSP goals. **See id.** at 3 (noting that Father did not complete drug and alcohol treatment, anger management, domestic violence counseling, or specialized parenting classes, and did not attend Child's medical appointments). The trial court's factual findings are supported by the record, and its legal conclusions are not the result of an error of law or an abuse of discretion. **In re Adoption of S.P.**, **supra**. Accordingly, we rely on the trial court's rationale in determining that the requirements of subsection 2511(a)(2) have been met by clear and convincing evidence. **See** Trial Court Opinion, 5/18/16, at 3-4 (unnumbered).

Next, we review the termination of Father's parental rights under section 2511(b). The focus in terminating parental rights under section 2511(a) is on the parent, but, under section 2511(b), the focus is on the child. **In re Adoption of C.L.G.**, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental,

physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Further, no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Moreover, it is appropriate to consider a child's bond with his or her foster parent. *See In re: T.S.M.*, 71 A.3d at 268.

[C]ontradictory considerations exist as to whether termination will benefit the needs and welfare of a child who has a strong but unhealthy bond to [her] biological parent, especially considering the existence or lack thereof of bonds to a pre-adoptive family. As with dependency determinations, we emphasize that the law regarding termination of parental rights should not be applied mechanically[,] but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Obviously, attention must be paid to the pain that inevitably results from breaking a child's bond to a biological parent, even if that bond is unhealthy, and we must weigh that injury against the damage that bond may cause if left intact. Similarly, while termination of parental rights generally should not be granted unless adoptive parents are waiting to take a child into a safe and loving home, termination may be

necessary for the child's needs and welfare in cases where the child's parental bond is impeding the search and placement with a permanent adoptive home.

… [The Adoption and Safe Families Act of 1997, P.L. 105-89] ASFA[,] was enacted to combat the problem of foster care drift, where children … are shuttled from one foster home to another, waiting for their parents to demonstrate their ability to care for the children. *See In re R.J.T.*, 9 A.3d at 1186; *In re Adoption of S.E.G.*, [901 A.2d 1017, 1019 (Pa. 2006)]. This drift was the unfortunate byproduct of the system's focus on reuniting children with their biological parents, even in situations where it was clear that the parents would be unable to parent in any reasonable period of time. Following ASFA, Pennsylvania adopted a dual focus of reunification and adoption, with the goal of finding permanency for children in less than two years, absent compelling reasons. *See*[] 42 Pa.C.S. § 6301(b)(1); 42 Pa.C.S. § 6351(f)(9) (requiring courts to determine whether an agency has filed a termination of parental rights petition if the child has been in placement for fifteen of the last twenty-two months).

*In re T.S.M.*, 71 A.3d at 268-69 (some citations omitted); *see also In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008) (stating that "[t]he bonding cannot be in one direction only – that of child to the parent – but must exhibit a bilateral relationship which emanates from the parents' willingness to learn appropriate parenting, anger management, drug rehabilitation and marital stability." (citation omitted)).

Finally, "we will not toll the well-being and permanency of [a child] indefinitely." *In re Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting.")).

Father argues that the trial court erred in terminating his parental rights under section 2511(b) because the evidence showed that Child has a positive parental bond with him, and that it would be detrimental to Child if this bond was severed. **See** Father's Brief at 12, 23; **see also id.** at 19-20 (pointing to the testimony of two witnesses at the hearing on the termination Petition that Child had a bond with Father). Father asserts that his "substantial compliance" with his FSP goals and the parental bond establishes that termination of Father's parental rights is not in the best interest of Child and would harm her emotional needs and welfare. **Id.** at 12, 23.

In its Opinion, the trial court addressed Father's challenge concerning section 2511(b) and determined that the evidence presented was clear and convincing that termination of Father's parental rights would best serve Child's needs and welfare. **See** Trial Court Opinion, 5/18/16, at 5-6 (unnumbered). The trial court found that Child has been in placement for nearly four years, and that no bond worth preserving exists such that Child would suffer permanent emotional harm if Father's parental rights are terminated. **Id.** at 3, 5; **see also In re K.Z.S.**, **supra**. Further, the trial court noted that Child's continued attachment to Father should not be misconstrued as bonding. **See** Trial Court Opinion, 5/18/16, at 6. The trial court additionally found that Child is bonded to her pre-adoptive foster parents (more so than her attenuated bond to Father), her maternal aunt

and uncle. *Id.* The trial court's factual findings are supported by the record, and its legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, *supra*. We therefore, affirm the trial court's Decree, with regard to section 2511(b), based on the trial court's Opinion. *See* Trial Court Opinion, 5/18/16, at 5-6 (unnumbered).

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2016

IN THE COURT OF COMMON PLEAS

FOR THE COUNTY OF PHILADELPHIA

FAMILY COURT DIVISION

IN RE: L.M.F.                                :         ~~CP-51-DP-0065569-2008~~

                                             :         CP-51-AP-0000087-2014

APPEAL OF:  A.F., Father                     :         783 EDA 2016

OPINION

**Irvine, J.**

This appeal arises from this Court's order on February 9, 2016 terminating the parental rights of A████ F█████, father. Father's parental rights were terminated pursuant to the petition filed by Tara Amoroso, the Child Advocate.

Claire Leotta, counsel for father, filed a timely appeal from the February 9, 2016 order terminating parental rights with attached Concise Statements of Errors, Affidavits of Service, and other related documents necessary to perfect this appeal.

**Factual and Procedural Background**

A summary of the relevant procedural history is set forth as follows:

The child, L.M.F., was born on May 31, 2005.

On October 11, 2011, DHS received a General Protective Services (GPS) report alleging that L.M.F. had poor hygiene, dental concerns – rotting teeth, and head lice.

On October 13, 2011, DHS learned that the child, L.M.F., needed an Individualized Education Plan (IEP) and required a Therapeutic Staff Support (TSS) worker. The parents were not following through with the child's academic and developmental needs. The parents refused to consent to a psychological evaluation. DHS also learned that both parents had alcohol issues. The child resided

with both parents. DHS observed that the condition of the home was inappropriate for the child to reside.

On December 22, 2011, DHS learned that the child's doctor at The Children's Hospital of Philadelphia (CHOP) had concerns about the child's physical and mental health.

DHS observed during several home visits that both parents smelled of alcohol. DHS offered the parents in-home protective services several times, however, the parents refused. Lastly, DHS discovered that the parents had domestic violence issues.

In January, 2012, DHS attempted several unsuccessful home visits.

On March 9, 2012, an adjudicatory hearing was held before the Honorable Jonathan Q. Irvine. Judge Irvine adjudicated L.M.F. dependent and committed her to the care and custody of DHS. The child was placed in foster care.

The matter was listed on a regular basis before judges of the Philadelphia Court of Common Pleas – Family Court Division – Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa C.S.A. §6351, and evaluated for the purpose of determining or reviewing the permanency plan of the child.

In subsequent hearings, the DRO's reflect the Court's review and disposition as a result of evidence presented, addressing, and primarily with, the goal of finalizing the permanency plan.

On September 30, 2014, and December 29, 2015, a Termination of Parental Rights hearing for L.G., the mother, and A.F., the father were held in this matter.

On February 9, 2016, The Court rendered its decision. The Court found by clear and convincing evidence that the father's and the mother's parental rights of L.M.F. should be terminated pursuant to the Pennsylvania Juvenile Act. Furthermore, the Court held it was in the best interest of the child that the goal be changed to adoption.

The instant timely appeal of the father follows.

**Discussion:**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S.A. §2511. In the present case, father's parental rights were terminated based on §2511(a) (1), (2), (5) and (8) and §2511(b).

§2511(a) provides that parental rights may be terminated based on any one of the grounds enumerated therein:

> General rule- the rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

In proceedings to involuntary terminate parental rights the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994)

Under Pennsylvania law, to satisfy section 2511 (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue. *In re J.D.W.M.*, 810 A2d 688, 690 (Pa. Super, 2002).

It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, father failed to perform parental duties for the child. The court found by clear and convincing evidence that father refused or failed to perform his parental duties.

In the instant case, the father did not complete his Family Service Plan (FSP) goals. The father's FSP objectives were: 1) complete drug and alcohol treatment (N.T., 9-30-14, p. 41), 2) complete a specialized parenting class for children with special needs (N.T., 9-30-14, p. 47), 3) complete an anger management/domestic violence course (N.T., 9-30-14, p. 48), 4) attend the child's medical appointments (N.T., 9-30-14, p. 61), 5) attend family therapy with the child. and 6) maintain visits with the child (N.T., 9-30-14, p.61). The father did not complete drug and alcohol treatment (N.T., 9-30-14, p. 41). Furthermore, the father did not attend a specialized parenting class (N.T., 9-30-14, p. 47). Moreover, the father did not complete an anger management/domestic violence course (N.T., 9-30-14, p. 59). Additionally, the father did not attend the child's medical visits (N.T., 9-30-14, p. 61). Lastly, the father did not consistently attend family therapy. (N.T., 12-29-15, p. 81).

A parent has an affirmative obligation to act in his child's best interest. In reference to parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate a willingness and capacity to undertake the parental role". *In re D.J.S.*, 737 A2d 283,286 (1999) (quoting *In re Adoption of Hamilton*, 379 Pa. Super. 274, 549 A.2d 1291, 1295 (1988)).

In the instant matter, the child has been in placement care for over forty-five months. The testimony established that the child is in a stable, safe and secure pre-adoptive home (N.T., 12-29-15, pgs. 90 and 14) and termination of the father's parental rights is in the best interest of the child. (N.T., 12-29-15, p. 37).

Section 2511 (a) (2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity,

abuse, neglect or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S.A. §2511 (a) (2).

Courts have further held that the implications of a parent's limited success with services geared to remedy the barriers to effective parenting can also satisfy the requirements of §2511 (a) (2). *In the matter of B.L.W.,* 843 A.2d 380 (Pa. Super. 2004), the Court's grave concerns about Mother's ability to provide the level of protection, security and stability" that her child needed was sufficient to warrant termination. Id. at 388

Termination of parental rights under §2511(a)(2) is not limited to affirmative misconduct but may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.,* 797 A.2d326, 337 (Pa. Super.2002).

In the instant case, the DHS intake worker, Tiffany McLean, testified that the father's alcohol use has been an issue since 2011 (N.T., 9-30-14, p. 8). The testimony of the DHS social worker, Rudolph Petruzzelli, confirmed that from September, 2012 until June, 2014, father tested positive for drugs and alcohol on several occasions. The father was diagnosed with alcohol dependency. The father was referred for a treatment recommendation on three separate occasions. The treatment recommendation for the father included a detox program and a subsequent intensive outpatient program. The father did not follow the treatment recommendation. He did not complete a drug/alcohol program (N.T., 9-30-14, pgs. 33-41). Furthermore, six days prior to the December 29, 2015 termination hearing, the father attended a supervised visit with the child under the influence of alcohol. (N.T., 12-29-15, pgs. 49-50). Lastly, the father's visits remained supervised while the child was in the care and custody of DHS.

§2511(a) (5) requires that:

> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

§2511(a) (8) states:

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S.A. §2511(b); *In re Bowman*, 436 Pa. Super. 647 A.2d 217 (1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his parental rights to determine if the evidence in light of the totality of the circumstances clearly warrants involuntary termination.

When determining the best interest of a child, many factors are to be analyzed, "such as love, comfort, security and stability. *In re Adoption of T.B.B.*, 787 A.2d 1007, 1013-1014 (Pa. Super. 2003). Another factor that a court is to consider is what, if any bond exists for the child. *In re Involuntary Termination of C.W.S.M. and K.A.L.M.*, 839 A.2d 410,415 (Pa. Super. 2003).

The termination of parental rights is controlled by 23 Pa. C.S.A §2511(a). Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under Section 2511 (a). *In the Interest of B.C.*, 36 A.3d 601 (Pa. Super. 2012). If the trial court determines that the parent's conduct warrants termination under Section 2511 (a), it must then engage in an analysis of the best interest of the child under Section 2511(b). *See id.*

Pursuant to Section 2511 (b), the trial court must take in account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. *In Re C.S.*, 761 A.2d 1197, 1202 (Pa. Super. 2000).

In the instant matter, several social workers testified regarding the issue of a parental bond with the father. DHS social worker, Mr. Petruzzelli, (N.T., 9-30-14, p. 61) testified that father and child have a parental bond. However, Mr. Petruzzelli also testified that the child also shares a parental bond with the kinship parent (N.T., 9-30-14, p, 69). Ateyah Hobson, the agency foster family care supervisor, (N.T., 12-29-15, p. 15), and Sheena Pearce, the agency social worker, (N.T., 12-29-15, p, 59), testified that there is no parental bond between father and child. Lastly, the child advocate social worker, Danielle Sawter, testified that a parent/child bond exists between the father and child (N.T., 12-29-15, p. 110). However, Ms. Sawter specified that the child has MORE of a parental bond with the foster parents (N.T., 12-29-15, p. 114).

The appropriate manner in which to define the bond between parent and child in the context of a termination proceeding is set forth in the following passage:

> The bonding cannot be in one direction only-that of child to the parent-but must exhibit a bilateral relationship which emanates from the parents' willingness to learn appropriate parenting, anger management, drug rehabilitation and marital stability. It is inconceivable that a child's bonding to the parent, if it can be documented, will supervene failure to thrive, domestic violence reports and removal of the children into foster care due to adjudications of dependency and termination findings...

*In re K.K.R-S.*, 958 A.2d 529, 534 (Pa.Super.2008) (quoting *In re Involuntary Termination of C.W.S.M.*, 839 A.2d 410, 418-419 (Pa. Super. 2003).

In the instant case, the father's failure to complete his FSP goals demonstrated his unwillingness to learn appropriate parenting, anger management and drug rehabilitation. "The continued attachment to the natural parents, despite serious parent rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding" *C.W.S.M.*, supra at 41.

The testimony is undisputed that a bond exists between the foster parents and the child. The child calls the pre-adoptive kinship foster mother "mom" and made a mother's day card for her (N.T., 12-29-15, pgs. 19-21). The child did not have an issue separating from the father and returning to the foster parents after a visit (N.T., 9-30-14, p. 70, and N.T., 12-29-15, pgs. 57 and 87). The child has multiple mental health, educational and developmental needs which are all met by the foster parents (N.T., 12-29-15, p. 16). Furthermore, the child is "part of the family, she fits in" (N.T., 12-29-15, p. 23). Lastly, there was also testimony that the child would not suffer irreparable harm if the father's parental rights were terminated. (N.T., 12-29-15, pgs. 15, 59 and 116).

In the instant case the child advocate filed the petition to terminate the parental rights of A.F., the father, and change the goal to adoption. "In those cases where reunification is not appropriate, adoption is viewed as providing the greatest degree of permanence" *In re S.H.*, 71 A3d 973, 978 (Pa. Super. 2013).

The Trial Court found by clear and convincing evidence that the Child Advocate met her statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) & (b) and that it was in the best interest of the child to change the goal to adoption (N.T., 2-9-16, p.83).

**Conclusion:**

Accordingly, the Trial Court's Decree entered on February 9, 2016 terminating the parental rights of A.F. should properly be affirmed.

By the Court

_____
                                                    J.